**United States District Court**
**District of Massachusetts**

|                      |   |              |
|----------------------|---|--------------|
| **JOSEPH ZAVATSKY,** | ) |              |
| **Plaintiff,**       | ) |              |
|                      | ) |              |
| **v.**               | ) | **Civil No.** |
|                      | ) | **11-11850-NMG** |
| **JOHN O'BRIEN,**    | ) |              |
| **ELIZABETH TAVARES,** | ) |            |
| **PAUL LUCCI, and**  | ) |              |
| **ROBERT MULLIGAN,** | ) |              |
| **Defendants.**      | ) |              |
|                      | ) |              |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case emanates from a hiring scandal within the
Massachusetts Probation Department. Plaintiff is a probation
officer who alleges that the defendants, his superiors, awarded
promotions on the basis of political affiliation rather than merit.
Plaintiff has been a party to state civil proceedings addressing
these events. Both the United States and the Commonwealth of
Massachusetts are pursuing related criminal investigations.

**I. Facts**

The following facts are drawn from the Complaint and
accepted as true for purposes of resolving the motions before the
Court.

Joseph Zavatsky has been employed by the Probation
Department of the Commonwealth of Massachusetts as a probation
officer since 1985. By February 2005, the beginning of the

-1-

timeframe relevant to his Complaint, Mr. Zavatsky had risen to the position of Senior Probation Officer.

At that time, defendant John O'Brien served as Commissioner of the Probation Department. The Commissioner oversees the administration of probation services throughout the Commonwealth. Defendant Elizabeth Tavares served (at different times) as O'Brien's Second and First Deputy Commissioner, while defendant Paul Lucci was a Deputy Commissioner.

Defendant Robert Mulligan was appointed Chief Justice for Administration and Management ("CJAM") of the Massachusetts Trial Court in 2003. His responsibilities included overseeing the administration of the Probation Department, which is a division of the Massachusetts Trial Court. Prior to Chief Mulligan's appointment, his predecessor published the Personnel Policies and Procedures Manual ("the Policies Manual") applicable to the Probation Department. Among other rules, the Policies Manual required that all appointments "be made solely on the basis of merit" and charged the CJAM with certifying that departments comply with the standards for hiring personnel contained in the Policies Manual.

The heart of the plaintiff's grievance relates to events that took place in February, 2005 when he and eleven other candidates applied for a promotion to become the Assistant Chief Probation Officer in the district where he was then employed.

-2-

Pursuant to the Policies Manual, hiring is conducted in two
steps. First, an interview committee consisting of a designee of
the Commissioner's Office, the Chief Probation Officer of the
local district, and the Chief Justice of the particular district
court act as an initial screen and select up to eight candidates
to advance to a second round of interviews. Final selections are
then made from among candidates who advanced to the second round.

Initially, plaintiff was selected to become one of eight
finalists to be interviewed for the Assistant Chief Probation
Officer position. That decision had, however, been made without
consideration of the candidacy of one Elzy Tubbs, a
Probation-Officer-in-Charge of a corrections center in the
Hyannis District. Mr. Tubbs had failed to appear for his
interview before the committee. He was allegedly defendant
O'Brien's "preferred choice" for the position because he was
politically affiliated with state legislators with whom defendant
O'Brien sought to curry favor. The plaintiff had no such
political affiliation.

As a result of pressure from defendants O'Brien and Tavares,
and Chief Mulligan's alleged acquiescence, the initial interview
committee was dissolved and the process restarted with a second
interview committee. Defendant Lucci served on the second
interview committee which did not advance plaintiff's candidacy
to the second round of interviews. Tubbs was among the eight

-3-

candidates advanced and was ultimately hired for the position.

After learning that he had not been selected by the second interview committee, Mr. Zavatsky filed a grievance pursuant to the collective bargaining agreement ("the CBA") between his union and the Trial Court. In that grievance, he argued that the dissolution of the first interview committee departed from required procedures and violated his rights. Defendants Tavares and Lucci allegedly gave false testimony regarding those events during grievance hearings and the Trial Court and an arbitrator ultimately denied his claim.

The plaintiff sought but was denied a second Assistant Chief Probation Officer position in his district in or around 2007. That process was also purportedly rigged in favor of an unnamed candidate who was advanced on account of his political affiliation. The Complaint contains no further allegations regarding Zavatsky's unsuccessful application in 2007 but he did not file a second grievance because he was allegedly "intimidated and/or coerced" into foregoing one as a result of his experiences in 2005.

The plaintiff discovered the details surrounding Elzy Tubbs' promotion through the release of the Ware Report on November 18, 2010. The Ware Report published the results of an inquiry initiated by the Supreme Judicial Court ("the SJC") in May 2010 to investigate the Probation Department's hiring and promotion

-4-

practices. The Ware Report includes testimony from Edward
Dalton, who was the Commissioner's designee on the first
interview committee for the position sought by Zavatsky in
February 2005. Dalton testified that defendant Tavares directed
Dalton to advance Elzy Tubbs to the second round of the interview
process.

## II.  **Procedural History**

On October 19, 2011, Joseph Zavatsky filed a Complaint in
this Court asserting claims against O'Brien, Lucci, Chief
Mulligan and Tavares (collectively, "the defendants"). The
Complaint includes federal causes of action under 42 U.S.C. §
1983 for violation of the Due Process and Equal Protection
Clauses of the United States Constitution and state-law claims
for interference with rights in violation of M.G.L. ch. 12, §11I.

Zavatsky alleges that he was qualified for the position of
Assistant Chief Probation Officer but was passed over on more
than one occasion because the hiring process was rigged in favor
of politically connected individuals. According to Zavatsky, 1)
he was deprived of his property interest in "a fair, equitable
and merit-based promotion process" without due process of law, 2)
his right to equal protection under the law was violated as a
result of political discrimination, and 3) he was intimidated
into forgoing his right to file a grievance. He seeks relief in
the form of compensatory and punitive damages as well as

attorneys' fees and costs.

Defendants Mulligan and Lucci have filed separate motions to dismiss. Plaintiff has opposed those motions and filed a motion to amend the Complaint to add facts to support the asserted claims and to plead several of the counts with greater specificity and clarity. Defendants Mulligan and Lucci have also opposed plaintiff's motion to amend his complaint. Defendant O'Brien has moved to stay the case pending the outcome of grand jury investigations at the state and federal levels, a motion joined in by Tavares and opposed by the plaintiff and defendants Mulligan and Lucci. The United States and the Commonwealth of Massachusetts have filed joint motions to intervene and to stay discovery. Plaintiff and defendant Lucci have opposed the stay.

### III. **Motions to Dismiss**

The substance of plaintiff's allegations against defendants Mulligan and Lucci stem from their purported involvement in the rigged hiring process: Chief Mulligan as an acquiescent supervisor and Lucci as one of the interviewers to pass over the plaintiff. Defendant Mulligan allegedly approved the dissolution of the First Interview Committee considering Zavatsky's application for the position of Assistant Chief Probation Officer in 2005 and, more generally, failed to stop the corrupt practices alleged in the complaint. Defendant Lucci participated in the Second Interview Committee considering Zavatsky's application in

-6-

2005 and allegedly voted in favor of advancing Elzy Tubbs to the final stage in the interview process, in lieu of the plaintiff, because of Tubbs' political affiliation with a legislator with whom Commissioner O'Brien sought to curry favor.

Defendants Lucci and Mulligan have moved separately to dismiss the plaintiff's claims against them for failing to state a claim upon which relief can be granted, pursuant to Fed. R. of Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A pleading that offers mere labels and conclusions or a formulaic recitation of the elements of a cause of action fails to state a claim. Id.

Post-Twombly and Iqbal, ruling on a motion to dismiss involves two inquiries. First, the Court must assess whether the complaint contains sufficient factual allegations to state a claim for relief and to inform the defendant of the nature of that claim. In so doing, the Court accepts as true all well-pled (i.e. non-conclusory, non-speculative) facts as true, and draws all reasonable inferences in the non-movant's favor. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 56 (1st Cir. 2012).

Second, the Court must determine whether the claim is plausible. Assessing plausibility is a

> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense [to
> determine whether the well-pled facts alleged in the
> complaint are sufficient to] permit the court to infer
> more than the mere possibility of misconduct.

Iqbal, 556 U.S. at 679. Apart from well-pled facts, when determining a claim's plausibility, the Court may also consider implications from documents attached to or fairly incorporated into the complaint, facts susceptible to judicial notice and concessions in plaintiff's responses to the motion to dismiss. Schatz, 669 F.3d at 56.

While the plaintiff's factual allegations differ slightly as to Lucci and Chief Mulligan, the Court will consider the claims against them collectively because those defendants raise similar arguments in opposition.

## A.  Due Process

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving any person of "life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1.  Among other things, the Due Process Clause serves to forbid certain arbitrary, wrongful government deprivations regardless of how fairly it is implemented ("substantive" due process) and to guarantee that other deprivations follow a fair procedure ("procedural" due process). See Zinermon v. Burch, 494 U.S. 113,

-8-

125 (1990) (describing protections afforded by the Due Process
Clause).  In order to state a substantive due process violation,
a plaintiff must show that he suffered a deprivation of life,
liberty or a property interest and that such deprivation occurred
through governmental action that "shocks the conscience." Clark
v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008).  In order to state
a procedural due process violation, a plaintiff must show that he
was deprived of a property interest without adequate process
which is determined by balancing three factors laid out by the
Supreme Court in Mathews v. Eldridge, 424 U.S. 319 (1976). See
Collins v. Univ. of New Hampshire, 664 F.3d 8, 16-17 (1st Cir.
2011) (discussing Mathews test).

     In order to invoke either substantive or procedural due
process, then, the alleged constitutional violation must involve
a recognized life, liberty or property interest. It is here that
the plaintiff's due process claims fall short.

     In order to hold a protected property interest, a plaintiff
must have a "legitimate claim of entitlement to [the interest]"
rather than an "abstract need or desire" for it or a "unilateral
expectation" of obtaining it. Bd. of Regents v. Roth, 408 U.S.
564, 577 (1972).  The contours of what constitutes a protected
property interest are not contained within the Constitution but
are instead defined by "existing rules or understandings"
stemming from an independent source, such as state law, that

-9-

secure a benefit or support a claim of entitlement to one. Id.
For example, a plaintiff could demonstrate a property interest in
continued employment by proving the existence of a "de facto
tenure" policy in place at his public university. See Perry v.
Sindermann, 408 U.S. 593, 601-602 (1972) (explaining policy could
constitute an implied contract).

The First Circuit has, however, rejected a claimed property
interest in a promotion that was denied to someone who was passed
over on separate occasions. Coyne v. City of Somerville, 972 F.2d
440 (1st Cir. 1992). In that case, the teacher-plaintiff was a
finalist for promotions on three separate occasions and was
passed over in spite of being the only candidate with the proper
certification as required by statute. Id. at 443. The City's
discretion appears to have figured into the court's decision
because it noted that, while the hiring body had hired candidates
who were technically ineligible, the relevant statute permitted
them to prescribe "additional requirements" beyond certification.
Id. at 443 n.3. Alternatively, even if only one candidate was
certified for the position, plaintiff still had no entitlement to
the promotion because the City was free to choose not to hire
anyone. Id. The First Circuit concluded that even under those
circumstances

> there [was] no scenario under which plaintiff's interest
> in the job promotions sought could rise to the level of
> a protected property interest under the Fourteenth
> Amendment.

-10-

Id. at 443-44.

Zavatsky lays claim to an entitlement that is distinct from
Coyne's claim. Here, plaintiff claims that the defendants'
actions have denied him both procedural and substantive due
process by depriving him of his property interest in a "fair and
merit-based promotional process" that is laid out in the
Policies Manual applicable to the Department of Corrections. He
does not claim that he had a property interest in being promoted
but rather that he had a property interest in the process by
which he was evaluated for a promotion.

The First Circuit's analysis in Coyne reveals, however, how
far out on a limb the plaintiff has climbed to establish a
property interest. Zavatsky alleges only that he should have
been advanced to a final round of interviews and been allowed to
compete for the position against seven other candidates. While
the Policies Manual guarantees a merit-based evaluation, it does
not define the prerequisite merits. In contrast, on three
separate occasions Coyne was the only candidate who was qualified
for the job under the relevant statute. Had that statute been
strictly applied, as Zavatsky would have us do here, Coyne should
have actually been hired. Yet, the First Circuit found that
Coyne did not have a property interest in the promotion.

While novel, the plaintiff's abstraction from the right to a
promotion to a right to the process cannot save the his due

-11-

process claim.  As the defendants point out, the plaintiff has

not cited a single case in this jurisdiction in which a court has

held that a plaintiff has a property interest in promotion

processes.  Rather, plaintiff claims only that the First Circuit

has not foreclosed the possibility of such a property interest

based on Lavash v. Kountze, 604 F.2d 103 (1st Cir. 1979).  In

that case, the plaintiff complained that he had a property

interest in being "fairly evaluated for promotion" under a state

civil service law that both required applicants to take a civil

service examination and then determined their eligibility based

upon the results. Id. at 105.  The First Circuit assumed that

such an interest was possible without deciding the issue en route

to rejecting the plaintiff's procedural due process claim. Id. at

6.

     As noted above, so rigid a system does not exist here, nor

is the Court constrained by Lavash because the First Circuit did

not decide the issue.  Looking to the decisions of other Courts

of Appeals, this Court is persuaded that plaintiff cannot hold a

property interest in a merits-based promotion process because

those courts have rejected precisely that claim.  In Teigen v.

Renfrow, the Tenth Circuit found that a plaintiff who complained

of blacklisting had no property interest in the "right to take

part in the promotion process," on the grounds that "an

entitlement to nothing but procedure cannot be the basis for a

-12-

property interest." 511 F.3d 1072, 1081 (10th Cir. 2007). In
Swartz v. Scruton, the Seventh Circuit rejected a claim to a
property interest in the method of calculating merit pay because
"[p]rocedural interests under state law are not themselves
property rights that will be enforced in the name of the
constitution." 964 F.2d 607, 610 (7th Cir. 1992) (citing Olim v.
Wakinekona, 461 U.S. 238, 248-51 (1983)).

    Most apposite, the Second Circuit has rejected a claimed
property interest in a competitive examination under
circumstances similar to the plaintiff's claim in Lavash.  In
McMenemy v. City of Rochester, 241 F.3d 279 (2d Cir. 2001), a
firefighter brought due process claims after he had been twice
passed over for promotions, in spite of having been promised one
by his superior.  McMenemy claimed that, of the candidates
chosen, one was not eligible for the promotion and the other
ranked below him on the civil service list that was tabulated, in
part, by the results of a civil service examination. Id. at 281-
82.  The New York civil service law at issue unambiguously
required that examinations for promotions be competitive. Id. at
287.  He argued that the procedure violated his due process
rights by depriving him of his property interests in the
promotion and in a competitive examination. Id.  The Second
Circuit rejected both contentions.  The court explained that the
plaintiff could not hold a property interest in a promotion, in

-13-

spite of his supervisor's related promise, because the City's "broad discretion in matters of promotion" foreclosed a claim of entitlement. Id. The court then rejected the plaintiff's claimed interest in a competitive examination because, while clearly required, "[a]n examination is not an end in itself; it has value only because it may lead to something valuable." Id.

Although the plaintiffs in the cited cases worded their claims differently, the decisions stand for the principle that a person cannot hold a constitutionally cognizable property interest in a procedure unless it protects a legitimate claim of entitlement to a substantive right. Whereas the statutes in Coyne, McMenemy, Teigen, and even Lavash specified some actual criteria upon which hiring decisions should be made, the Policies Manual here leaves it up to the interviewers to determine the prerequisite "merits" for each position.

As this survey illustrates, plaintiff has no due process claim. In Coyne, the First Circuit ruled out the possibility of a property interest in a promotion under similar circumstances. Absent such a substantive right, the Court finds that the decisions in McMenemy, Teigen, and Swartz have foreclosed plaintiff's claimed property interest in a "fair, equitable and merit-based promotion process."

Without a cognizable property interest, the plaintiff's procedural and substantive due process claims under Count I

-14-

(against O'Brien, Lucci, and Tavares) and Count IV (against Chief
Mulligan) are not viable.  They will, therefore, be dismissed as
to all defendants.

## B.    Political Non-Affiliation Claim

The Court notes at the outset that the pleading and argument
with respect to Counts II and IV has been, at best, convoluted.
This appears to be due to an error regarding the source of law
underlying plaintiff's claim of political discrimination based
upon non-affiliation.

The Complaint alleges that the defendants' political non-
affiliation discrimination violated his First Amendment rights,
but somehow did so by denying him equal protection of the law.
Any constitutional violation here would be an infringement of his
freedom of association guaranteed by the First Amendment, not the
Equal Protection Clause. Pagan v. Calderon, 448 F.3d 16, 33-34
(1st Cir. 2006).

Under the First Amendment, non-policymaking public employees
are protected from adverse employment decisions based on their
political affiliation. Barry v. Moran, 661 F.3d 696, 703 (1st
Cir. 2011).  That protection extends to the decision not to
associate with a political party or faction. Id. at 704 (citing
Rutan v. Republican Party of Ill., 497 U.S. 62, 76 (1990).

To make out a prima facie claim of political discrimination,
a plaintiff must show that 1) the plaintiff and defendant have

opposing political affiliations, 2) the defendant is aware of the plaintiff's affiliation, 3) an adverse employment action occurred, and 4) political affiliation was a substantial or motivating factor for the adverse employment action. Welch v. Ciampa, 542 F.3d 927, 938-39 (1st Cir. 2008).

The denial of a promotion, if based substantially upon political affiliation, qualifies as an "adverse employment action" for the purposes of plaintiff's claim. See Rutan, 497 U.S. at 62 (promotions, transfers and recalls based on political affiliation or support infringe public employees' First Amendment rights). However, the plaintiff has the burden of proving that his association was "political and not personal" because "mere personal association without political overtones does not implicate First Amendment concerns." Barry, 661 F.3d at 704. "Political" in this context means pertaining to the conduct of government, public policy or policy controversies. Id. at 704.

In essence, Zavatsky argues that he was denied his promotion in 2005 because his interviewers had already decided to hire Elzy Tubbs. As motivation, he alleges that O'Brien, Tavares and Chief Mulligan were allied with Tubbs' political affiliate and they rigged the interview process in order to please those affiliates. He reiterates this claim as to the promotion he was denied in 2007, though he provides no details.

Defendants respond that the Complaint fails to plead

-16-

sufficient facts to establish that the affiliations at issue were political and not merely personal. Both Chief Mulligan and Lucci also dispute that the allegations can demonstrate as to either defendant that they were aware of Zavatsky's political affiliation, that their affiliations were in conflict or that such knowledge was a substantial or motivating factor in the denial of the promotion.

The Court agrees with the defendants. The key questions are with respect to Tubbs' relationship to his political allies and the relationship of Chief Mulligan and Lucci to those same allies. Beginning with Chief Mulligan, the Complaint alleges that Tubbs' political affiliation "caused" Chief Mulligan to favor Tubbs during the hiring process because Tubbs' allies were close to defendant O'Brien and others within the Probation Department and the Trial Court. Setting aside whether this claim is well-pled (as it is made "upon information and belief"), it does not allege how Chief Mulligan's relationship to Tubbs' allies is "political" and not merely "personal." While it is plausible that the relationship was based upon friendship, or even upon a desire to curry favor with an influential politician, both explanations point to a "personal" relationship because favoritism and institutional politics are not sufficiently political. See Barry, 661 F.3d at 706 (employment decisions based on "back-scratching, log-rolling, horse-trading, institutional

-17-

politics, envy, nepotism, [and] spite" are unsavory but not unlawful).  Absent more specific factual allegations regarding the relationship of Tubbs' affiliates to Chief Mulligan, plaintiff's claim cannot succeed because the alleged adverse employment action is not based upon a political association.

The same "personal" relationship hurdle that was erected by the Barry decision applies to plaintiff's claim against Lucci. Here the Complaint is, however, even more deficient because it alleges only that the relationship between O'Brien, Tavares and Chief Mulligan, on the one hand, and Tubbs' political affiliate, on the other, caused them to favor Tubbs' candidacy.  While Zavatsky has alleged that Lucci voted to approve Tubbs' candidacy and advance him to the next round of interviews, he has not claimed that Lucci's decision was based upon a preference for Tubbs' affiliates.  This defect is fatal to Zavatsky's claim against Lucci because he cannot establish that the requisite discriminatory animus motivated Lucci's decision to vote for Tubbs, and impliedly, against Zavatsky.

For those reasons, the plaintiff's non-affiliation claims against Chief Mulligan (Count V) and Lucci (Count II) will be dismissed.

### C.   Massachusetts Civil Rights Act

To establish a claim under the Massachusetts Civil Rights Act, Mass. Gen. Laws. c. 12, § 11I ("the MCRA"), the plaintiff

-18-

must establish that 1) his exercise or enjoyment of rights secured by the federal or state constitutions or laws 2) has been interfered with, or attempted to be interfered with, and 3) the interference or attempted interference was by "threats, intimidation, or coercion." Haufler v. Zotos, 845 N.E.2d 322, 335 (Mass. 2006). The SJC has determined that because the act is a civil rights statute and intended to be remedial, it is "entitled to a liberal construction of its terms." Id. However, the act is not intended to create a "vast constitutional tort," and its application is limited to instances where the derogation of secured rights occurs by "threats, intimidation or coercion." Id. Even "direct deprivation" of a plaintiff's rights is not actionable under the act unless it is accomplished by means of one of these three constraining elements. Buster v. George W. Moore, Inc., 783 N.E.2d 399, 410 (Mass. 2003).

Whether conduct constitutes a threat, intimidation or coercion is determined by the court applying the objective standard of a reasonable person. Meuser v. Fed. Express Corp., 564 F.3d 507, 520 (1st Cir. 2009) (citing Haufler, 845 N.E.2d at 335). For the purposes of the MCRA, these terms are defined as follows:

> a "threat" consists of the "intentional exertion of pressure to make another fearful or apprehensive of injury or harm." "Intimidation" involves "putting in fear for the purpose of compelling or deterring conduct." "Coercion" is the "application to another of such force, either physical or moral, as to constrain him to do

-19-

against his will something he would not otherwise have
done."

Haufler, 845 N.E.2d at 335 (internal citations omitted); accord
Meuser, 564 F.3d at 516.  Inherent in all three qualifying
actions is that the threats, intimidation or coercion must compel
the putative plaintiff to do something the person is not lawfully
required to do or to refrain from such action. Swanset
Development Corp. v. City of Tauntaun, 668 N.E.2d 333, 338 (Mass.
1996).

     With respect to coercion, while the statute allows claims
based on moral or economic pressure, the exception for "non-
physical coercion remains a narrow one." Meuser, 564 F.3d at 519.
In that case, the First Circuit affirmed the grant of summary
judgment against an employee who claimed that his employer had
violated the MCRA when it took several actions against him,
including the issuance of two warning letters and a suspension
with pay, and one incident where his supervisor screamed at him
and slammed her hands on the table. Id. at 517-519.  The district
court found that none of those incidents rose to the level of
threats, intimidation or coercion, and the First Circuit agreed.
Id. at 519.  More salient, the court agreed that the only
incident worthy of discussion was the confrontation between the
plaintiff and his supervisor.  The disciplinary actions and other
incidents were so "devoid of anything resembling" the sort of

-20-

pressure that is actionable under the MCRA that they were not
even deserving of extended examination. Id. at 520.

In Counts III (against O'Brien, Tavares, and Lucci) and VI
(against Chief Mulligan), the plaintiff alleges the defendants
violated his civil right to a fair and merits-based promotion
process guaranteed within the Policies Manual by threats,
intimidation or coercion.  Both Chief Mulligan and Lucci argue
that plaintiff's state law claim fails because Zavatsky has not
alleged that his rights were violated through "threats,
intimidation, or coercion."

Based upon the plaintiff's Complaint and responses to the
motions to dismiss, the Court discerns two actions attributed to
Chief Mulligan and Lucci that are alleged to constitute threats,
intimidation or coercion: first, Chief Mulligan's decision to
disband (or his failure to prevent the disbandment of) the first
interview committee that had included Zavatsky as one of eight
finalists, which had the "natural effect" of threatening,
coercing or intimidating Zavatsky; and second, the "message" that
Lucci sent to Zavatsky through his participation in the second
interview committee that passed over Zavatsky in favor of other
candidates on the basis of their political affiliation.  Those
violations, which occurred in February 2005, allegedly
"intimidated and/or coerced" Zavatsky into foregoing the labor
grievance process in 2007 after he was denied a second promotion

-21-

in that year.

Plaintiff's state law claims against both Chief Mulligan and Lucci will be dismissed because the complaint fails to demonstrate plausibly that the actions of either Chief Mulligan or Lucci rose to the level of threats, intimidation or coercion.

Plaintiff does not allege facts demonstrating actions by either defendant that put him in fear of injury or harm or in fear that otherwise compelled him to do or not do something. Viewed objectively, the participation and acquiescence of Chief Mulligan and Lucci in a corrupt promotion process, without more, does not instill in an applicant the fear of anything. Cf. Meuser, 564 F.3d at 517-519 (finding allegedly retaliatory personnel decisions were not threats, intimidation, or coercion).

Nor can plaintiff's allegations establish coercion of the sort prohibited by the MCRA because neither claim demonstrates the requisite constraint. Assessing the force alleged, the Court notes again that the "state of mind of the person threatened is not controlling." Meuser, 564 F.3d at 520. An objectively reasonable person would not be constrained to do something against his will by either the dissolution of the first interview committee or the second committee's decision to pass over the plaintiff. Even if Zavatsky had a civil right to either a promotion or a merits-based promotion process, those allegations constitute, at most, a "direct deprivation" of those rights

-22-

rather than a "constraint" upon his will to forego the exercise of those rights.

Because the plaintiff cannot plausibly claim that the actions of the defendants threatened, intimidated or coerced him into foregoing to exercise a protected civil right, Zavatsky's state law claims (Counts III and VI) will be dismissed as to Chief Mulligan and Lucci.

## IV. **Motion for Leave to Amend the Complaint**

Plaintiff seeks leave of the Court to amend his complaint pursuant to Fed. R. Civ. P. 15(a)(2), which states that a court "should freely give leave when justice so requires." Even so, district courts enjoy "significant latitude in deciding whether to grant leave to amend." U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009). Reasons for denying leave include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment. Id. Amendment is futile when the amended complaint would still fail to survive a motion to dismiss. See Adorno v. Crowley Towing and Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006).

Plaintiff states that by his amendment he has added factual allegations that lend greater specificity and clarity to his claims. Defendants Chief Mulligan and Lucci oppose the plaintiff's motion to amend his complaint on the grounds that

-23-

doing so would be futile. Upon review of the proposed Amended
Complaint, the Court finds that amendment of plaintiff's due
process claims would be futile and will be denied. Furthermore,
amendment of plaintiff's state law claims as to Chief Mulligan
and Lucci would be futile and will also be denied.

New factual allegations cannot cure the fundamental legal
flaw contained in plaintiff's due process theory. Zavatsky
cannot claim legitimate entitlement to a promotion and, absent
that, the denial of a merit-based promotion process does not
infringe a protected property interest for Fourteenth Amendment
purposes. Therefore, leave to amend Counts I and IV will be
denied.

Likewise, plaintiff's proposed amendments to his MCRA claims
cannot redress the defects contained within his allegations
regarding intimidation, threats and coercion by Chief Mulligan
and Lucci. As a matter of law, their alleged actions lacked the
requisite force and they could not have caused plaintiff to
refrain from any action, let alone the exercise of a protected
civil right. However, because the alleged actions of defendants
O'Brien and Tavares were not before the Court on this motion,
leave to amend the complaint with respect to the MCRA claims
against defendants O'Brien and Tavares will be allowed.

Finally, leave to amend the Complaint will be allowed with
respect to plaintiff's claims based upon his political non-

affiliation. Given the confusion surrounding the correct legal standard, it is appropriate to provide plaintiff an opportunity to amend his allegations so as to conform with the proper understanding of the law.

## V. **Motion to Intervene**

The United States and the Commonwealth of Massachusetts jointly move to intervene in this case, and the parties have not opposed this motion.

A district court may permit a movant to intervene in a civil action if that movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Where, as here, a United States Attorney's Office or state Attorney General's Office anticipates bringing related criminal charges against one or more defendants to a civil action, "it is well established" that such parties may intervene to seek a stay of discovery. SEC v. Downe, No. 92 Civ 4092 (PKL), 1993 WL 22126, at *11 (S.D.N.Y. Jan. 26, 1993). Having found that this case and the corresponding criminal investigations share common issues of law and fact, this Court concludes that United States and the Commonwealth of Massachusetts have demonstrated a sufficient interest in the present action to permit intervention.

## VI.  **Motions to Stay**

Defendants O'Brien and Tavares and intervenors United States
and the Commonwealth of Massachusetts have separately moved to
stay the proceedings pending the outcome of criminal proceedings
at the state and federal level.  The defendants seek a
comprehensive stay, while the intervenors seek a stay of
discovery.  Unlike the motions to stay in National Association of
Government Employees v. Mulligan, Civ. No. 11-11123, which were
unopposed, the motions to stay this case have been opposed by the
plaintiff and defendants Mulligan and Lucci.

A district court has the inherent discretionary authority to
stay a civil action if the interests of justice so require.
Microfinancial, Inc. v. Premier Holidays Intern., Inc., 385 F.3d
72, 77-78 (1st Cir. 2004).  The following seven factors bear upon
a court's decision whether to stay proceedings:

> 1) the interests of the civil plaintiff in proceeding
> expeditiously with the civil litigation, 2) the hardship
> to the defendant, including the burden placed upon him
> should the cases go forward in tandem, 3) the convenience
> of both the civil and criminal courts, 4) the interests
> of third parties, 5) the public interest, 6) the good
> faith of the litigants (or the absence of it) and 7) the
> status of the cases.

Id. at 78.  While a court is not compelled to stay a civil
proceeding during the pendency of a parallel criminal
investigation or prosecution, such a scenario has been recognized
as one in which a stay may be appropriate.  Id.  Furthermore,
courts possess the inherent power to stay pending litigation

-26-

"when the efficacious management of court dockets reasonably requires such intervention." Marquis v. FDIC, 965 F.2d 1148, 1154 (1st Cir. 1992).

In support of their motions to stay, Defendants O'Brien and Tavares point out that a stay would avoid putting defendants in the position of choosing whether to invoke their Fifth Amendment rights and risk losing the civil action or to answer discovery requests in the civil action and risk criminal prosecution. This inequity, they claim, far outweighs harm done to the plaintiffs or the public because the plaintiff's claim rests on events that are already seven years old.

The United States and the Commonwealth are principally concerned that discovery will interfere with ongoing criminal investigations that they are pursuing. Specifically, they claim that many of the documents at issue in their investigation and in this complaint are currently impounded and granting civil parties access to those records will divert needed resources away from the investigation, complicate chain of custody issues involved in prosecution and overwhelm witnesses. Further, they fear that criminal defendants will be tempted to use liberal civil discovery rules to their advantage and that the entire process will waste judicial resources.

Plaintiff responds that a stay would prejudice his interest in proceeding expeditiously with this litigation. It would

-27-

lengthen the time he must wait to obtain relief, drive up
litigation costs and increase the risk of losing witnesses. He
also emphasizes that the pending criminal investigations are not
co-extensive with this case, which involves alleged fraud
relating to the hiring and grievance process with respect to only
one individual: Zavatsky.

Defendant Lucci objects to a stay and requests that, if the
Court elects to grant a stay, it rule on his motion to dismiss
before doing so. Lucci maintains that protective orders can be
instituted to relieve the administrative burden associated with
providing access to the Probation Department files and prevent
the defendants from using liberal discovery rules to their
advantage. He has also expressed the desire to avoid having
civil charges hanging over his head for years.

Proceeding to an analysis under the Microfinancial decision,
the Court finds, first, that the plaintiff's interest in
expeditious resolution of his civil claim will always be delayed
by the grant of a stay, but no more so here than in other cases.
The plaintiff does not allege irreparable harm and while he took
other measures expeditiously, this suit was filed several years
after the most recent events in the case. While the plaintiff
claims that he brought suit shortly after the Ware Report was
published in November 2010, it is unclear whether a further delay
would be particularly prejudicial. Moreover, the Court notes

-28-

that the plaintiff is participating in ongoing civil proceedings
in state court specifically designed to redress corrupt hiring
practices in the Probation Department.  Because he may obtain
relief in that proceeding, whatever prejudice results from
delaying this action will be lessened.

Under the second factor, defendants claim hardship under
either scenario.  Defendants Mulligan and Lucci express the same
interest in expeditious resolution that the plaintiff claims.
However, defendants O'Brien and Tavares have a much greater
liberty interest at stake because they face prosecution, and
unlike the situation in the Microfinancial case, at the time this
motion was filed defendant O'Brien had already been indicted.
While the Court agrees that, based on the information before it,
O'Brien's case concerns bribes facially unrelated to the
promotion at issue here, indictments are susceptible to amendment
and ultimately both the civil and criminal cases against O'Brien
charge corruption and the exchange of political favors.  There is
a risk that discovery in this matter will expose them to further
criminal sanctions which weighs upon their ability to defend this
action.

Third, unlike in Microfinancial, this case is not on the
brink of trial and discovery has not yet begun.  The Court
suspects that further amendments and dispositive motions are in

-29-

the offing and, under those circumstances, delay is not likely to
inconvenience this Court.

Fourth, although the public and third parties may have an
interest in favor of proceeding, their interest may be vindicated
through the ongoing state civil and criminal proceedings.
Furthermore, while other individuals similarly situated to
Zavatsky may be watching this case and evaluating the strength of
their claims, they may reflect upon this Court's opinion
regarding Zavatsky's legal theories.

While the Court must assess these competing interests, it
finds that staying discovery in this case is warranted while the
ongoing criminal investigation and state civil proceedings
develop. A complete stay, however, is unwarranted at this time.
As discussed supra, the Court will consider amendments to the
Complaint, if any, and any responsive pleadings thereto. The
parties will also be directed to update the Court from time to
time on the status of ongoing criminal and civil proceedings in
state court.

#### ORDER

In accordance with the foregoing,

1)   The motions to dismiss filed separately by defendants
     Robert Mulligan (Docket No. 16) and Paul Lucci (Docket
     No. 19) are **ALLOWED**;

2)   Counts I and IV of the Complaint (Docket No. 1) are
     **DISMISSED** as to all defendants;

3)   Counts II, III, V and VI of the Complaint (Docket No.
     1) are **DISMISSED** as to defendants Robert Mulligan and
     Paul Lucci;

4)   The plaintiff's motion to amend the Complaint (Docket
     No. 52) is, with respect to Counts II and V, **ALLOWED**
     and is, with respect to  Counts III and VI as to
     defendants John O'Brien and Elizabeth Tavares, **ALLOWED**;

5)   The plaintiff's motion to amend the Complaint (Docket
     No. 52) is, with respect to Counts I and IV, **DENIED**,
     and is, with respect to Counts III and VI as to
     defendants Robert Mulligan and Paul Lucci, **DENIED**;

6)   The government's motion to intervene (Docket No. 35) is
     **ALLOWED**; and

7)   The motion to stay proceedings filed by defendant
     John O'Brien (Docket No. 27) and joined by defendant
     Elizabeth Tavares (Docket No. 28) is **DENIED**, but the
     government's joint motion to stay discovery (Docket No.
     35-1) is **ALLOWED**.

**So ordered.**

_Nathaniel M. Gorton_

Nathaniel M. Gorton
United States District Judge

Dated September 30, 2012

-31-